IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>DONTAVIOUS CUNNINGHAM,<br><br>Defendant. | Case No. CR16-3007<br><br>REPORT AND RECOMMENDATION |

## TABLE OF CONTENTS

I.   INTRODUCTION ................................... 2

II.  PROCEDURAL HISTORY ............................. 2

III. ISSUE PRESENTED ................................ 2

IV.  RELEVANT FACTS ................................. 2

V.   DISCUSSION ..................................... 5
     A.   Alleged Franks Violation ................... 6
          1.   Deliberate or Reckless Omissions ...... 7
          2.   Probable Cause ........................ 10
     B.   Inevitable Discovery ....................... 12

VI.  RECOMMENDATION ................................. 13

## I. INTRODUCTION

On the 11th day of April 2016, this matter came on for hearing on the Motion to Suppress Evidence (docket number 32) filed by Defendant Dontavious Cunningham on March 23, 2016. The Government was represented by Special Assistant United States Attorney Nathan W. Nelson. Defendant appeared in court and was represented by his attorney, Christopher J. Nathan.

## II. PROCEDURAL HISTORY

On February 17, 2016, Defendant was charged by indictment with possession of a firearm by a felon. Defendant pled not guilty at his arraignment on February 24, and trial was scheduled for April 25. On March 23, Defendant timely filed the instant motion to suppress. Because of the pending motion, the trial was continued to June 20.

## III. ISSUE PRESENTED

Defendant asks the Court to suppress evidence of a firearm seized from Defendant's pants pocket during the execution of a search warrant on December 8, 2015. Citing *Franks v. Delaware*, 438 U.S. 154 (1978), Defendant argues that if certain material omissions had been included in the warrant application, probable cause to issue the warrant would have been lacking. The Government denies there was a *Franks* violation, and asserts alternatively that the firearm would have been inevitably discovered even if a warrant to search Defendant's person had not been issued.

## IV. RELEVANT FACTS

In October 2015, the Iowa Division of Narcotics Enforcement ("DNE") opened an investigation into the manufacture of methamphetamine, which ultimately led them to Defendant. DNE Special Agent Matthew Anderson testified that a confidential source (hereafter "CS") was stopped by an Iowa State Trooper and issued several traffic citations. CS asked to speak with Ryan Moore, a special agent in charge with the DNE. Moore had

worked with CS on drug investigations in the past. Moore, who is Anderson's boss, instructed Anderson to contact CS.

Before working with a confidential informant, Agent Anderson typically obtains information regarding the informant's criminal history. According to Anderson, it is "very typical" for an informant to have a prior criminal record. The parties stipulated that CS was convicted in Iowa of interference with official acts in 2009, harassment in the third degree in 2010, possession of a controlled substance in 2011, assault in 2012, domestic assault in 2014, violation of a no contact order in 2015, and two counts of theft in 2015. All of the Iowa convictions are misdemeanors. CS was also convicted of misdemeanor delivery or manufacture of a controlled substance in Michigan, and misdemeanor marijuana possession in Georgia. Anderson opined that there was nothing "unusual" about CS's criminal history.

Agent Anderson initially met with CS and conducted a "debriefing" or interview. CS provided Anderson with information regarding several individuals. According to Anderson, "most of the people on the list were either methamphetamine distributors, marijuana distributors, or people in possession of firearms." Several of the names provided by CS were known to law enforcement. Anderson testified that the information provided by CS "fit with information" he already knew. In most cases, Anderson asked CS to introduce him to the other individuals. When asked whether he was able to buy drugs from those individuals, Anderson responded "yes, I was and am."

CS asked Agent Anderson if he was interested in information regarding the manufacture of methamphetamine. CS then introduced Anderson to "Mark Country" on October 13, 2015.[1] Using a telephone number and other information, a DNE analyst was

---

[1] The search warrant application refers to October 31, but Agent Anderson testified that was a "typo."

3

later able to identify "Mark Country" as Mark Cunningham. The analyst also determined that Mark Cunningham (hereafter "Cunningham") had a brother named Dontavious Cunningham (the defendant herein). Anderson was provided with the criminal histories of Cunningham and Defendant.

Agent Anderson purchased two grams of methamphetamine from Cunningham on October 13, 2015, and Cunningham "bragged" that he was a "good cook." In a second controlled buy on November 6, Anderson purchased four grams of methamphetamine from Cunningham. On November 10, CS provided Anderson with Cunningham's phone number, and Anderson contacted Cunningham directly. Anderson then went to Cunningham's apartment in Forest City to purchase methamphetamine. While inside Cunningham's apartment, Anderson observed materials consistent with the manufacture of methamphetamine. Cunningham introduced his "girl," Amber Walton. Anderson returned to Cunningham's apartment on November 20, and again purchased methamphetamine.

Two additional controlled buys were conducted on November 24 and November 30. Prior to the latter buy, CS called Agent Anderson and reported that Cunningham had a "five box batch" with two bottles "rolling" at the same time. Anderson called Cunningham and arranged to meet on November 30, when Anderson purchased five and one-half grams of methamphetamine. At that meeting, Cunningham told Anderson that he was going to Alabama for a week.

On the morning of December 8, 2015, CS called Agent Anderson and reported that Cunningham was back in Iowa and his brother, "Don," was with him.[2] CS told Anderson they had three guns and ice methamphetamine. Anderson asked CS to provide a

---

[2] Agent Anderson had been told previously by the DNE analyst that Cunningham had a brother named Dontavious Cunningham.

photograph of the guns and drugs. CS subsequently texted photos of two guns and the drugs, which were attached to Anderson's subsequent application for a search warrant. CS reported the third gun was on Defendant's person, however, and CS did not feel comfortable trying to get a photograph. Anderson then called Cunningham and, after haggling on the price, agreed to meet that evening so Anderson could purchase the ice methamphetamine.

In the afternoon of December 8, Agent Anderson submitted an application for a search warrant to Judicial Magistrate Patrick B. Byrne.[3] The application asked for a warrant to search Cunningham's apartment, the vehicle used by Cunningham, Cunningham's person, Amber Walton, and Dontavious Cunningham. Magistrate Byrne found probable cause and issued a search warrant as requested.

During the evening of December 8, after waiting for Cunningham, Walton, and Defendant to return, Agent Anderson entered Cunningham's apartment and purchased ice methamphetamine from Cunningham for $770. Shortly after Anderson left the apartment, the Iowa State Patrol tactical team, which is certified for methamphetamine lab entry, entered the residence to execute the search warrant. During the search, authorities found two guns on a shelf in the bedroom where Cunningham kept his drugs, and a third gun in Defendant's pocket.[4]

## V. DISCUSSION

Defendant concedes, as he must, that there was probable cause for a warrant to search Cunningham's apartment. Prior to the warrant being issued, Agent Anderson

---

[3] Copies of the application, supporting affidavits and attachments, and the search warrant were introduced at the hearing as Government's Exhibit 1.

[4] On February 17, 2016, Mark Cunningham was charged by indictment with seven drug-related offenses and one count of being a felon in possession of a firearm. *United States v. Mark Cunningham*, No. 3:16-cr-03008-LTS (N.D. Iowa). Cunningham's plea of guilty to two counts was accepted on April 4, 2016, and he is currently in custody awaiting sentencing.

purchased methamphetamine from Cunningham on six occasions, including twice at Cunningham's apartment. Defendant further concedes that the search warrant application and supporting affidavit — taken on its face — supported probable cause for a warrant to search Defendant's person. The affidavit noted that both Cunningham and Defendant are convicted felons. The affidavit states Anderson was told by CS that "CUNNINGHAM'S brother 'Don' came back from Alabama with him and has a silver gun." Attached to the affidavit was a photograph of two handguns at Cunningham's apartment, and the affidavit states CS "advised a third handgun is there but is being carried by DONTAVIOUS was [*sic*] it is not shown in the photograph."

Defendant argues, however, that the application and supporting affidavit omitted material facts which would have undermined CS's credibility. Specifically, Defendant complains that "the affidavit fails to fully and thoroughly inform that, in fact, CS 4131 has an extensive criminal history," and also fails to detail CS's criminal associations. Defendant also contests Agent Anderson's assertion on Affidavit C that CS "has no motivation to falsify the information." According to Defendant, if the additional information had been included in Anderson's affidavit, then probable cause to search Defendant's person would have been lacking.

### A. Alleged Franks Violation

In *Franks v. Delaware*, 438 U.S. 154 (1978), the Court addressed the issue of whether a defendant ever has the right "to challenge the truthfulness of factual statements made in an affidavit supporting the warrant." The Court held that under certain circumstances a defendant has such a right.

> [W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the

> Fourth Amendment requires that a hearing be held at the defendant's request. In the event that at the hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.

*Franks*, 438 U.S. at 155-56.

The rule in *Franks* has been extended to allow challenges to affidavits based on alleged material omissions. *United States v. Reivich*, 793 F.2d 957, 960 (8th Cir. 1986). Adapting *Franks* to a situation involving omissions from affidavits, the defendant must show "(1) that the police omitted facts with the intent to make, or in reckless disregard of whether they thereby made, the affidavit misleading; and (2) that the affidavit if supplemented by the omitted information would not have been sufficient to support a finding of probable cause." *Id.* at 961 (internal citations omitted). *See also United States v. Conant*, 799 F.3d 1195, 1199-1200 (8th Cir. 2015).

### 1. *Deliberate or Reckless Omissions*

The first prong of the *Franks* test requires Defendant to show Agent Anderson intentionally omitted facts to make the affidavit misleading, or recklessly disregarded whether the omitted facts would make the affidavit misleading. Here, Defendant complains that Anderson did not provide details regarding CS's prior criminal record or CS's association with known criminals, and disputes Anderson's assertion that CS "has no motivation to falsify the information." Affidavit C, attached to the application for search warrant, provided the issuing magistrate with information regarding CS. The form permits the affiant to check a box if the confidential informant "has no known criminal record." Similarly, the affiant can check a box if the confidential informant "has no known

association with known criminals." Anderson left both boxes blank, indicating CS *has* a criminal record and *does* associate with known criminals. The affidavit did not, however, provide any further detail in that regard.

The Eighth Circuit Court of Appeals has found that *not* checking a box indicating a confidential informant has *no* known criminal associations is sufficient to alert the issuing magistrate that the confidential informant *does* have such associations. In *United States v. Wold*, 979 F.2d 632 (8th Cir. 1992), the affiant officer did not inform the magistrate issuing the warrant that the confidential source "had been a drug dealer for a number of years, was cooperating with the police in order to receive leniency, and was being paid by the police." *Id.* at 634. Like Agent Anderson here, the affiant in *Wold* deliberately left blank a portion of the application which would have indicated the confidential informant had "no known association with known criminals." *Id.* at 635. The Court concluded that because that portion was blank, the magistrate "reasonably would infer" that the confidential informant associated with known criminals. The Court noted that "[j]udicial officers issuing warrants are aware of deals made with informants who themselves are facing charges," and concluded that the failure to inform the issuing officer of a deal is not fatal to the validity of the warrant. *Id.* *See also United States v. Williams*, 477 F.3d 554, 559-60 (8th Cir. 2007) ("We have held that probable cause is not defeated by a failure to inform the magistrate judge of an informant's criminal history if the informant's information is at least partly corroborated.").

Moreover, even *if* the failure to detail an informant's criminal history constitutes a material omission, to constitute a *Franks* violation, the omission must be made "with the intent to make, or in reckless disregard of whether they make, the affidavit misleading." *Conant*, 799 F.3d at 1200. Agent Anderson testified he found nothing "unusual" about CS's string of misdemeanor convictions, and it was not his intent to mislead the magistrate. Recklessness may be inferred from the fact of omission of information, but

only if "the material omitted would have been clearly critical to the finding of probable cause." *Id.* As set forth in *Wold* and *Williams*, details regarding an informant's criminal history are not "critical" to a finding of probable cause, particularly when the information is at least partly corroborated. *Williams*, 477 F.3d at 559-60. "A showing of deliberate or reckless falsehood is 'not lightly met.'" *United States v. Butler*, 594 F.3d 955, 961 (8th Cir. 2010) (quoting *United States v. Wajda*, 810 F.2d 754, 759 (8th Cir. 1987)). I believe Defendant has not shown that details of CS's prior criminal record or criminal associations were omitted by Anderson with the intent to make the affidavit misleading, or in reckless disregard of whether they made the affidavit misleading.

Defendant also disputes Agent Anderson's assertion that CS had no motivation to falsify the information. Anderson reasoned that the traffic citations issued by the state trooper were not serious enough to "motivate" CS to lie about a conspiracy to manufacture methamphetamine. Furthermore, Anderson believed that because CS would be dropped as a confidential informant if he lied, CS would be motivated to tell the truth. In *United States v. Carnahan*, 684 F.3d 732 (8th Cir. 2012), the defendant made similar complaints. There, the affidavit failed to disclose that the confidential informant had prior misdemeanor convictions relating to bad checks, was cooperating with law enforcement to avoid a misdemeanor cocaine possession charge, and was believed to have engaged in recreational cocaine use. *Id.* at 735. The defendant asserted that "these non-disclosures rendered materially false the officers' averrals that John Doe was a mature person of truthful reputation who had no motive to falsify information." *Id.* The Court noted that reckless disregard for the truth may be inferred from the omission of information from an affidavit only when the material omitted "would have been clearly critical to the finding of probable cause." *Id.* In rejecting the defendant's argument, the Court found that "[o]mitting that a confidential informant has a criminal record or is cooperating does not

satisfy this rigorous standard when the informant's information is partially corroborated or his general credibility is otherwise not significant to the probable cause inquiry." *Id.*

While it would have been preferable for Agent Anderson to provide the issuing magistrate with details of CS's prior criminal record, Defendant has provided no authority for the proposition that an affiant is required to do so. More importantly, Defendant has failed to prove Anderson omitted the information cited by Defendant intending to mislead the issuing magistrate or with reckless disregard of whether the omissions would make the affidavit misleading. Accordingly, Defendant has failed to prove the first prong of a *Franks* violation.

### 2. Probable Cause

Even *if* Defendant proved Agent Anderson intentionally omitted facts to make the affidavit misleading, or omitted facts in reckless disregard of whether it would make the affidavit misleading, Defendant must *also* show that the affidavit, if supplemented by the omitted information, could not support a finding of probable cause. *Conant*, 799 F.3d at 1200. I believe Defendant is also unable to prove this prong of a *Franks* violation.

Affidavit C advised the issuing magistrate why CS should be considered reliable. According to the affidavit, (1) CS "has provided reliable information on other active investigations and has provided reliable information on other known narcotic distributors which has been corroborated by law enforcement," (2) CS has supplied information "numerous times," (3) CS's past information helped supply the basis for four search warrants, (4) CS's past information has led to four arrests, (5) CS's past information led to the filing of weapons and drug violations, (6) information from CS led to discovery and seizure of stolen property, drugs, or other contraband, (7) CS "has not given false information in the past," (8) the information supplied by CS in this investigation has been corroborated by law enforcement personnel, and (9) CS introduced Agent Anderson in this investigation in an undercover capacity. Affidavit A detailed CS's involvement in

introducing Anderson to Cunningham and setting up controlled buys from Cunningham. CS provided accurate information regarding Cunningham returning from Alabama, accompanied by Defendant. CS provided Anderson with information regarding the drugs and guns brought back from Alabama, and verified some of the information by providing photographs.

"In evaluating probable cause, a judicial officer reviewing an application for a search warrant does not use a hypertechnical approach." *United States v. Buchanan*, 574 F.3d 554, 561 (8th Cir. 2009). Instead, "the task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). Here, even if the affidavit was supplemented to include the details of CS's criminal history and criminal associations, and if the issuing magistrate was advised that CS was "working off" traffic citations, it would not defeat probable cause. CS had extensive knowledge regarding Cunningham's methamphetamine operation, provided Agent Anderson with accurate information in that regard, and assisted Anderson in setting up controlled buys. CS advised Anderson that Cunningham had returned from Alabama with his brother, and was in possession of guns and ice methamphetamine. Those facts were at least "partially corroborated" by CS taking photographs of two of the guns, while indicating the third gun was on Defendant's person. Even if the issuing magistrate had been advised that CS had a number of misdemeanor convictions and traffic citations pending, it would not defeat probable cause.

I conclude Defendant is unable to prove either prong necessary to support a *Franks* violation. First, Defendant has not proven that Agent Anderson omitted information to intentionally mislead the magistrate, or acted in reckless disregard of whether the

omissions made the affidavit misleading. Furthermore, even if the affidavit is supplemented or modified as suggested by Defendant, it does not affect a finding of probable cause. I recommend the motion to suppress be denied.

## B. Inevitable Discovery

As set forth above, I believe Defendant has failed to show a *Franks* violation. Accordingly, it is not necessary to consider the Government's alternative argument that the gun on Defendant's person "would have been inevitably discovered." Nonetheless, in case the district court disagrees with my *Franks* analysis, I will address the issue of inevitable discovery.[5]

The suppression of evidence under the exclusionary rule is "restricted to those areas where its remedial objectives are thought most efficaciously served." *United States v. McManaman*, 673 F.3d 841, 846 (8th Cir. 2012) (quoting *Segura v. United States*, 468 U.S. 796, 804 (1984)). Accordingly, even if evidence is obtained through some illegality, the evidence is nonetheless admissible if the Government can prove the evidence would have been obtained by "means sufficiently distinguishable" from the original illegality. This includes the doctrine of "inevitable discovery."

> [T]his inevitable discovery exception applies when the government proves "by a preponderance of the evidence: (1) that there was a reasonable probability that the evidence would have been discovered by lawful means in the absence of police misconduct, and (2) that the government was actively pursuing a substantial, alternative line of investigation at the time of the constitutional violation."

*McManaman*, 673 F.3d at 846 (quoting *United States v. Conner*, 127 F.3d 663, 667 (8th Cir. 1997)).

---

[5] Defendant did not file a reply brief and, therefore, his position regarding inevitable discovery is unknown.

I believe the Government has met both prongs of the inevitable discovery test. The Government was actively pursuing an investigation regarding Cunningham's manufacture of methamphetamine. Here, Defendant concedes that the search warrant properly authorized law enforcement to search Cunningham's apartment. Cunningham's apartment would have been searched on December 8, even if Defendant had never entered into the picture. In some ways, Defendant was an unlucky late entry into the investigation.

Agent Anderson testified that when a search warrant is executed, all persons present at that location are patted down for officer safety. It is "inherently dangerous" to execute a search warrant at a residence where it is believed methamphetamine is being manufactured, particularly when authorities have received reliable information that handguns can be found at the residence. Under these circumstances, officers are permitted to conduct a "minimally intrusive" pat-down to determine the presence or absence of weapons. *United States v. Menard*, 95 F.3d 9, 10-11 (8th Cir. 1996). Because Defendant was present when the search warrant was executed at Cunningham's apartment, he would have been patted down, *even if* the search warrant did not specifically authorize a search of Defendant's person. Defendant's gun would have been discovered during the pat-down.

In summary, the Government was actively pursuing a "substantial, alternative line of investigation" into the manufacture of methamphetamine by Cunningham. Even *if* a search warrant had not been obtained for Defendant's person, there was a "reasonable probability" that the gun would have been discovered when law enforcement executed the warrant to search Cunningham's apartment. Accordingly, even *if* there was a *Franks* violation and the warrant to search Defendant's person was invalid, the inevitable discovery doctrine precludes application of the exclusionary rule.

## VI. RECOMMENDATION

I respectfully recommend that the Motion to Suppress Evidence (docket number 32) filed by Defendant Dontavious Cunningham be **DENIED**. The parties are advised,

pursuant to 28 U.S.C. § 636(b)(1), that within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may serve and file written objections with the district court. *The parties are reminded that pursuant to Local Rule 72.1, "[a] party asserting such objections must arrange promptly for a transcription of all portions of the record the district court judge will need to rule on the objections." Accordingly, if the parties are going to object to this Report and Recommendation, they must promptly order a transcript of the hearing held on April 11, 2016.*

DATED this 15th day of April, 2016.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA